*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FLOYD, Minor.

UNPUBLISHED
December 3, 2020

No. 353051
Genesee Circuit Court
Family Division
LC No. 12-129129-NA

Before: JANSEN, P.J., and FORT HOOD and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, CF, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), (i) (parental rights to sibling terminated due to serious and chronic neglect or abuse), and (j) (reasonable likelihood of harm if returned to the parent). We affirm.

## I. BACKGROUND

Respondent's parental rights to all seven of her other children were previously terminated. DF was the legal father of three of these children. In February 2019, petitioner, the Department of Health and Human Services (the DHHS) filed a petition requesting the removal of CF from respondent's home on the basis that CF was at risk of harm in her care because respondent continued to maintain a relationship with DF, CF's legal father, even though the relationship was characterized by severe domestic violence. Petitioner alleged that DF previously stabbed respondent in the head with a screwdriver and that respondent was living with DF's mother even though, during proceedings in a prior termination case, she and DF's father had verbally threatened to kill respondent's ex-husband. Petitioner agreed to not seek termination at initial disposition and to allow CF to remain in respondent's care as long as respondent successfully completed "baby court"—a docket designed to provide intensive services to at-risk families—and did not have contact with DF and his family. Respondent found independent housing, which petitioner deemed to be appropriate. At the plea and initial disposition hearing, respondent admitted that she previously lived with DF's mother and that it was not appropriate for CF to be around DF and his family.

-1-

Throughout the baby court proceedings, the caseworker and baby court coordinator reported that respondent was doing well in the program and that she was on track to graduate in December 2019. However, respondent never graduated from the program. Instead, petitioner filed a termination petition after learning that respondent was still in contact with DF. At the termination trial, testimony and 911 calls established that in October 2019, DF struck respondent near her ear, that DF cut her finger with a kitchen knife, and that CF was present when this incident occurred. Respondent had told the 911 operator that the "live-in father of her child" assaulted her. Subsequent 911 calls also established that respondent continued to maintain contact after the October 2019 incident. This appeal followed.

## II. REASONABLE EFFORTS

First, respondent argues that petitioner failed to provide reasonable efforts to reunify her with CF because it did not provide her services to address her domestic violence issues. We disagree.

Respondent did not object or indicate that the services provided were inadequate until the termination trial, so respondent's issue is unpreserved. See *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). We review respondent's unpreserved issue for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

Generally, "the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). In order to make reasonable efforts, the DHHS adopts a service plan aimed at rectifying the conditions that caused the child's removal. *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). See also MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home"). Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent[] to participate in the services that are offered" and "demonstrate that [he or she] sufficiently benefited from the services provided." *In re Frey*, 297 Mich App at 248.

In this case, contrary to respondent's argument, the record reflects that respondent was offered services to address her domestic violence issues. Respondent addressed her history of domestic violence during her individual therapy sessions at Infant Mental Health. Respondent was also offered, and even participated in, services to address her domestic violence issues in her prior termination cases. However, respondent failed to benefit from these services because she continued to maintain contact with DF. Accordingly, the trial court did not plainly err by concluding that petitioner made reasonable efforts to preserve and reunify the family, including by offering domestic violence services.

## III. STATUTORY GROUNDS

Next, respondent argues that the trial court erred when it found statutory grounds to terminate her parental rights. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

Contrary to respondent's argument, the trial court did not err by terminating her parental rights under MCL 712A.19b(3)(c)(*i*). Termination under MCL 712A.19b(3)(c)(*i*) is proper when "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

Here, more than 182 days elapsed since the initial disposition order was entered at the time of termination. See MCL 712A.19b(3)(c)(*i*). The conditions that led to adjudication were respondent's admissions that she was living with DF's parents and that DF previously stabbed respondent in the head with a screwdriver. At the plea hearing, respondent indicated that she understood that she needed to "stay away" from DF. However, not only did respondent maintain contact with DF, but she allowed DF to live with her. Given the history of severe domestic violence between respondent and DF and respondent's failure to benefit from domestic violence services, there was no reasonable likelihood that the conditions that led to adjudication would be rectified within a reasonable time considering CF's age. See *id*. Accordingly, we are not left with a definite and firm conviction that a mistake has been made with respect to the trial court's determination that termination was proper under MCL 712A.19b(3)(c)(*i*).[1] See *In re Schadler*, 315 Mich App at 408.

## IV. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in CF's best interests. We disagree.

We review the trial court's determination that termination is in a child's best interests for clear error. *Id*. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the trial court should place its "focus on the child rather than the parent." *Id*. at 411. "[T]he court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency,

---

[1] Because only one statutory ground is required to terminate a respondent's parental rights, we will not address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*ii*). See *In re Frey*, 297 Mich App at 244. Further, because respondent raises arguments only with respect to MCL 712A.19b(3)(c)(*i*) and (c)(*ii*), she has abandoned any arguments with respect to MCL 712A.19b(3)(g), (i), and (j). See *Martin v Martin* ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349261); slip op at 10 (stating that "[a]bsent any meaningful discussion of [an] issue, there simply is nothing for this Court to review").

stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Although respondent had a bond with CF and there was no indication that he was ever physically harmed while he was in her care, the trial court focused on respondent's history of being in a domestic violence relationship with DF and CF's need for permanency and stability. The trial court stated, "[S]ince I've been doing this, the ebb and flow has changed with the recognition that trying to maintain intact familial relationships is better than rushing to termination, maybe better than foster care, may work out better than some adoptions." By not seeking termination at initial disposition and agreeing to allow CF to remain in respondent's home, petitioner did not rush to termination and instead tried to keep respondent's relationship with CF intact. However, not only did respondent maintain contact with DF, but as the trial court stated, she actively tried to conceal the fact that she was allowing DF to live with her. The caseworker testified that she did not know DF was living with respondent because respondent would "send him away or hide him in the home." Respondent's continued contact with DF was also the reason that she did not graduate from the baby court program. As the trial court stated, CF was at risk of emotional harm by witnessing the ongoing domestic violence between respondent and DF, and DF needed stability and freedom from this domestic violence. Based on the record evidence, we discern no clear error in these findings or the trial court's determination that termination of respondent's parental rights was in CF's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood